IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| MATTHEW CURTIS MCNATT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 119-139 |
| ) | |
| MAJOR JOHN H. BUSH; CAPTAIN ) | |
| CASSANDRA HAYNES; MAJOR CHESTER ) | |
| V. HUFFMAN; SERGEANT WILLIAMS; ) | |
| BURKE COUNTY SHERIFF'S ) | |
| DEPARTMENT; JAIL ADMINISTRATORS; ) | |
| BURKE COUNTY JAIL ) | |
| ADMINISTRATORS; and BURKE COUNTY ) | |
| JAIL, ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, a pretrial detainee at Laurens County Jail in Dublin, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983, concerning events allegedly occurring at Burke County Jail ("BCJ") in Waynesboro, Georgia. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I. SCREENING OF THE AMENDED COMPLAINT**

  **A. BACKGROUND**

Plaintiff names as Defendants: (1) Major John H. Bush; (2) Captain Cassandra Haynes;

(3) Major Chester V. Huffman; (4) Sergeant Williams; (5) Burke County Jail Administrators; and (6) Burke County Jail.  (Doc. no. 20, pp. 1-3.)  Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On May 28, 2019, while detained at BCJ, an officer called for Plaintiff to go to the front of BCJ to talk with that officer and would then be returning back.  (Doc. no. 20-1, p. 1.)  When Plaintiff reached the front, officers placed Plaintiff in a holding cell and told Plaintiff the United States Marshals service were coming to take Plaintiff to Jefferson County Jail ("JCJ").  (Id.) Plaintiff informed Sergeant Williams at the front desk he had important legal mail and property back in his cell.  (Id.)  Plaintiff begged the Sergeant Williams to return to his cell and get his legal mail and other property, but Sergeant Williams refused.  (Id.)

His legal mail consisted of two letters, one to his attorney and one to his probation officer, and in the letters, Plaintiff described a supervised meth purchase Plaintiff did with Agent Ben Harman with the Federal Bureau of Investigation ("FBI") and Rico Prince of the Bureau of Arms, Tobacco, and Firearms ("ATF") while on bond awaiting trial in Federal court.  (Id.)  The letters also discussed Plaintiff's efforts to find and label local gang leaders for the ATF from February 20, 2019 to April 29, 2019.  (Id.)  Plaintiff's property consisted of pictures of his family, with their addresses attached, money, and numerous other personal items.  (Id. at 2.)

Plaintiff's legal mail and property ended up in the hands of fellow inmate Dale Sherman because Plaintiff could not return to his cell.  (Id. at 1.)  Around May 29, 2019 to June or July, 2019, Mr. Sherman showed other inmates Plaintiff's legal mail, i.e. the two letters, and other messages located in BCJ's kiosk that Plaintiff had made with Burke County staff and investigators and agent Phillip Hambrick.  (Id.)  The week after Plaintiff was transferred to JCJ,

someone named Taylor James went to Plaintiff's mother's house and said a mand named "Trey" told him about the above legal mail and property. (Id. at 1-2.) Additionally, a man named Brad Mitchell went to Plaintiff's mother's house and also told her about the above events. (Id. at 2.) Mr. Mitchell also stated gang members from the gangs "Ghost Face" and "Bloods" inside BCJ said they were going to have Plaintiff killed. (Id.) Because Plaintiff was denied access to retrieve his legal mail, Plaintiff fears for his life. (Id.)

After the visits from Messrs. Sherman and Mitchell, Plaintiff's mother called Major Huffman in an attempt to retrieve Plaintiff's legal mail and property, so that it did not spread to other inmates. (Id.) Major Huffman stated he would investigate the matter and get Plaintiff's legal mail and property to Plaintiff at JCJ and try to punish Mr. Sherman. (Id.) Plaintiff's mother continued calling Major Huffman over twenty times, which Major Huffman eventually responded he could not help. (Id.) Plaintiff's mother then called Ben Harman, who then called Major Huffman. (Id.) Major Huffman responded by calling Plaintiff's mother, stating he would "personally make sure Plaintiff got his money and property." (Id. at 2-3.) The next day, Plaintiff only received his Bible at JCJ. (Id at 3.)

Plaintiff's mother then called Major Huffman again about Plaintiff's inmate trust fund account. (Id.) Major Huffman told some unknown person at BCJ to cut Plaintiff's account and mail a check to Plaintiff, but Plaintiff never received a check. (Id.) Plaintiff's mother called again, but Major Huffman only stated he had already mailed it. (Id.) Plaintiff's mother then called Captain Haynes three weeks later, who also stated the check had been mailed. (Id.) Five weeks later, Plaintiff's mother called Major Bush, who laughed at her on the phone, telling her not to call back. (Id.) Plaintiff alleges an inmates' account and kiosk become closed hours

3

before they are transferred to a new jail, and on previous transfers from BCJ, Plaintiff's accounts were closed the night before he was transferred. (Id.) Major Bush, Major Huffman, and Burke County Jail lied about mailing Plaintiff's money, and improperly handled his legal mail and property. (Id.)

Because Plaintiff was not allowed to retrieve his legal mail and property, Plaintiff is in a dangerous situation and has not received his money to this day. (Id. at 4.) Major Bush, Major Huffman denied Plaintiff his personal property and account money and lied to Plaintiff's family. (Id.) Plaintiff alleges Defendants have withheld or lost Plaintiff's property. (Id.) Plaintiff alleges he has lost $855, his reputation is ruined, his personal items were taken without due process, and his physical safety, along with his family, is in danger. (Id. at 5.)

### B. DISCUSSION

#### 1. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff No Longer Brings Any Claims Against Burke County Sheriff's Department and Jail Administrators

As the Court previously explained, (doc. no. 19, p. 4), Plaintiff's amended complaint supersedes and replaces in its entirety the previous complaint filed by Plaintiff. See Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016). Plaintiff's original complaint named six

5

Defendants, but his amended complaint removed Burke County Sheriff's Department and replaced Jail Administrators with Burke County Jail Administrators. (Cf. doc. no. 1; with doc. no. 20.) Burke County Sheriff's Department and simply Jail Administrators are not in the caption or the separate list of Defendants, and Plaintiff does not mention them anywhere in the statement of claim in the amended complaint. Nor does Plaintiff make any allegations associating any of these two Defendants with a purported constitutional violation, and dismissal is therefore appropriate. See West v. Atkins, 487 U.S. 42, 48 (1988) (requiring in § 1983 case allegation of violation of right secured by Constitution or laws of United States by person acting under color of state law); Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). Accordingly, Burke County Sheriff's Department and Jail Administrators should be dismissed. The Court still considers any claims against Burke County Jail Administrators separately.

### 3. Plaintiff Fails to State a Claim Against Burke County Jail Administrators and Burke County Jail

Burke County Jail is not a proper party because county jails are not subject to liability under § 1983. See, e.g., Smith v. Chatham Cty. Sheriff's Dep't, No. CV 412-224, 2012 WL 5463898, at *2 (S.D. Ga. Oct. 22, 2012) ("[T]he [county jail] is not a legal entity capable of being sued."), *adopted by* 2012 WL 5463762 (S.D. Ga. Nov. 8, 2012); Sebastian v. Maynard, No. 5:10-CV-221, 2010 WL 3395040, at *2 (M.D. Ga. July 12, 2010) ("The Lamar County Detention Center is not a legal entity that is subject to suit under 42 U.S.C. § 1983."), *adopted by* 2010 WL 3395154 (M.D. Ga. Aug. 21, 2010); Bolden v. Gwinnett Cty. Det. Ctr.

Med. Admin. Med. Doctors & Staff, No. 1:09-CV-1966, 2009 WL 2496655, at *1 (N.D. Ga. Aug. 12, 2009) ("Jails, like the Gwinnett County Detention Center, are not legal entities subject to suit under § 1983 at all."). Appropriate parties for suit under § 1983 include "persons" who participated in the alleged violation. See 42 U.S.C. § 1983; see also Ga. Insurers Insolvency Pool v. Elbert Cty., 368 S.E.2d 500, 502 (Ga. 1988) (limiting § 1983 liability to "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue") (quotations omitted).

As for Burke County Jail Administrators, the Eleventh Circuit has held that a district court properly dismisses a defendant where a plaintiff fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). Plaintiff fails to describe who Burke County Jail Administrators are or how they are connected to any constitutional violation. At most, Plaintiff is using Burke County Jail Administrators synonymously with Burke County Jail, which as discussed above, is not subject to liability under § 1983.

### 4. Plaintiff fails to State a Claim Against Major Bush, Captain Haynes, Major Huffman, and Sergeant Williams

Plaintiff alleges his property was searched and personal papers with sensitive information was lost, resulting in a loss of his reputation and placing him in danger of gang retaliation. (Doc. nos. 20, 20-1.) First, Plaintiff fails to allege any connection between Major Bush, Captain Haynes, and Major Huffman to any purported constitutional violations. As

7

stated in § I.B.3, supra, Plaintiff fails to state a claim when there are no allegations associating the defendant with the purported constitutional violation. Douglas, 535 F.3d at 1321-22. At most, Plaintiff alleges Major Bush, Captain Haynes, and Major Huffman did not help retrieve Plaintiff's belongings to his liking after his mother called multiple times more than a month after Plaintiff was transferred to JCJ. (Doc. no. 20-1.) Plaintiff does not allege Major Bush, Captain Haynes, and Major Huffman knew anything about Plaintiff's property not being transferred with him to JCJ or any involvement of these Defendants in the decision to transfer Plaintiff without allowing him to gather his belongings. Based on Plaintiff's allegations, Major Bush, Captain Haynes, and Major Huffman were not even aware of Plaintiff's belongings missing or in the hands of other inmates until well after it occurred. Thus, Plaintiff fails to allege any connection between Major Bush, Captain Haynes, and Major Huffman and the lost property or danger to Plaintiff.

Second, as to Major Bush, Captain Haynes, and Major Huffman, and Sergeant Williams, the Fourteenth Amendment does not protect against all deprivations of property, only against deprivations that occur "without due process of law." Parratt v. Taylor, 451 U.S. 527, 537 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-31 (1986). Georgia has created a civil cause of action for the wrongful deprivation of personal property. O.C.G.A. § 51-10-1. This statutory provision covers the unauthorized deprivation of an inmate's property by prison officials. Grant v. Newsome, 411 S.E.2d 796, 799 (Ga. App. 1991). The statutory cause of action constitutes an adequate post-deprivation remedy under Parratt. See Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987.) Thus,

8

Plaintiff has an adequate remedy at State law, and he fails to state a valid § 1983 claim against any Defendant for the loss of any personal property.

### 5. Any Potential State Law Claims Should Be Dismissed

To the extent Plaintiff may have any viable state law claims regarding the events alleged in his amended complaint, those should be dismissed so that Plaintiff may pursue them in state court. Pursuant to 28 U.S.C. § 1331, District Courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may <u>decline</u> to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ." <u>Id.</u> § 1367(c)(3) (emphasis added).

Indeed, a District Court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists. <u>See</u> <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1258 (11th Cir. 2000) (directing dismissal of state law claims when case "retains no independent basis for federal jurisdiction"); <u>see also</u> <u>Republic of Panama v. BCCI Holdings (Luxembourg) S.A.</u>, 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."). Accordingly, any potential state law claims should be dismissed so that Plaintiff may, if he chooses, pursue them in state court.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's amended complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 12th day of February, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA